NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KIRK A., | ) | |
| | ) | Supreme Court No. S-17737 |
| Appellant, | ) | |
| | ) | Superior Court No. 1KE-19-00496 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| BARBARA T., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1837 – July 21, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Trevor Stephens, Judge.

Appearances: C. Keith Stump, Law Offices — C. Keith Stump, Ward Cove, for Appellant. Notice of non-participation filed by Leif Thompson, Leif Thompson Law Office, Ketchikan, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

1. Kirk appeals the superior court's 2020 grant of his former wife Barbara's petition for a long-term domestic violence protective order (DVPO). He asks us to vacate the DVPO and award him attorney's fees.

2. After a magistrate denied Barbara's ex parte petition for a short-term DVPO, the superior court scheduled an evidentiary hearing on her petition for a long-

---

[*] Entered under Alaska Appellate Rule 214.

term order. The hearing was combined with a hearing regarding interim motions filed in the parties' divorce case.

3. Barbara testified about an incident that had happened "a year or two ago." She said that when she walked away from Kirk during an argument he "grabbed my hair from [behind] . . . . And jerked my head back probably the hardest he had ever pulled my hair." She stated that in response, she swung her hand back and "got him" in the groin. She testified that Kirk then "picked me up off the ground in a . . . chokehold." She stated she was "thrashing . . . . [a]nd . . . couldn't breathe." Barbara testified that after Kirk released the chokehold, he was crying and apologized, saying "I could have killed you. I couldn't stop." She admitted on cross-examination that she did not report the incident to police.

4. Barbara also described Kirk's practice of pulling the hair of female family members and "head flick[ing]" the males as punishment. She testified that Kirk exercised complete control over her life and that after she was diagnosed with Parkinson's disease several years ago she relied on him to cook, take her to doctor's appointments, and help her with her medications. She also testified about an incident when Kirk pulled a tarp on which one of her sons was standing, causing him to fall and Barbara to call police.

5. Kirk testified and admitted that the chokehold incident Barbara described had occurred as she said, but he disagreed about when it happened. Kirk claimed the incident happened more than three years ago and stated that he acted in self-defense after Barbara hit him. He acknowledged that in the past he had "[c]ornered" Barbara in rooms when she tried to leave arguments.

6. One of Barbara's sons testified that Kirk had called him after the incident in which he lifted Barbara off the ground in a chokehold, described the events, and

apologized. Barbara's other son also testified and agreed with his mother that Kirk controlled family decisions and that he pulled hair and flicked heads as discipline.

7. Kirk moved twice to dismiss the petition; the court denied both motions. In response to the first motion, the court cautioned Barbara that not everything she described in her testimony constituted crimes of domestic violence against her, but it also noted that the chokehold incident "clearly would be a crime involving domestic violence" against her. The court then stated that it would next need to find that Kirk "now represents a credible threat." After the close of evidence, Kirk again asked the court to dismiss the petition because the chokehold incident had occurred more than three years ago, and the court again denied the motion.

8. The court found that Barbara was credible and that the chokehold incident was an assault against her. It specifically found that Kirk was not acting in self-defense when he choked her. And the court added that Kirk had committed "at least one other assault" where one of Barbara's sons "got in [Kirk's] face" after he had pulled her hair. Returning to its previous observation that it would need to find that Kirk posed a current credible threat to Barbara, the court concluded that such a finding might be necessary only to impose a firearms restriction, which was not an issue before it. The court placed no weight on Barbara's failure to leave Kirk or report the chokehold to authorities. The court then took the matter under advisement "to consider the passage of time since the most recent incident" and the parties' separation.

9. Later that day the court granted the long-term DVPO, checking the box on the form identifying "assault or reckless endangerment" as crimes of domestic violence. It then prohibited Kirk from committing further acts of domestic violence or from contacting Barbara in any way except through his attorney, one of her sons, or the mail. The order awarded possession of the parties' home to Barbara and prohibited Kirk from coming within 100 feet of it or interfering with any vehicle Barbara owned or occupied.

10. The court also issued an interim order in the divorce case. It set forth findings supporting the DVPO in a footnote, explaining that the DVPO was "appropriate and necessary" despite the passage of time since the chokehold incident because of Kirk's "anger . . . [and] control issues." As evidence of Kirk's continuing anger problems, the court referred to the recent incident "when he yanked the tarp" and caused "[one of her sons] to fall," although the court explicitly clarified "that incident was not directed specifically at [Barbara]."

11. Kirk moved for reconsideration, arguing that the court had "misapplied AS 18.66.100" because the chokehold incident had occurred several years ago and there had not been any domestic violence since the parties separated. He also maintained that the court misunderstood all the facts surrounding the incident, and that the magistrate's denial of a short-term order should have led the court to conclude that a long-term DVPO was also not warranted.

12. In its order denying reconsideration the court rejected Kirk's claims that it had overlooked any relevant facts and pointed out that AS 18.66.100(e) specifically mandated that a "court may not deny a petition for [a] protective order . . . solely because of the lapse of time between an act of domestic violence and the filing of the petition." The court reiterated its conclusion that it was not required to find that Kirk posed a current credible threat to Barbara but noted that it had "made credible threat findings [in the interim order in the divorce]." Finally, it rejected Kirk's argument that the denial of the petition for a short-term order was relevant, as it was based only on the ex parte petition, while the long-term DVPO was granted after an evidentiary hearing.

13. On appeal, Kirk repeats the arguments he made in his motion for reconsideration. And because he cannot show that the superior court abused its discretion when it granted Barbara's petition for a long-term DVPO, we affirm the superior court's order.

14. Kirk admitted under oath that he "grab[bed]" Barbara by the neck in a chokehold. Alaska law defines a "dangerous instrument" to include "hands, other body parts, or other objects when used to impede normal breathing or circulation of blood by applying pressure on the throat or neck or obstructing the nose or mouth."[1] Use of a dangerous instrument to cause physical injury to another person constitutes a felony assault.[2] Despite Kirk's arguments that his conduct was "*De Minimus*," [sic] the chokehold incident clearly amounts to a crime of domestic violence that he committed against Barbara.[3]

15. As the superior court correctly pointed out, Kirk's argument that the chokehold incident occurred too long ago to be the basis of a DVPO is contrary to the statute he cites. Alaska Statute 18.66.100(e)(1) forbids a court from denying a petition for a DVPO "solely because . . . there is a lapse of time between an act of domestic violence and the filing of the petition."

16. Finally, we agree with the superior court that it was not required to find that Kirk posed a current credible threat to Barbara.[4] Alaska Statute 18.66.100(b) requires

---

[1]    AS 11.81.900(b)(15)(B).

[2]    AS 11.41.210(a)(1).

[3]    Although the superior court found that Kirk had committed another assault against Barbara when he pulled her hair and her son "got in his face," it is not necessary for the court to find more than one incident of domestic violence to grant a DVPO. *See* AS 18.66.100(b) (providing that court may grant a DVPO if it "finds by a preponderance of evidence that the respondent has committed *a* crime involving domestic violence against the petitioner" (emphasis added)).

[4]    Kirk also resurrects his claim that the court improperly relied on his assault against Barbara's son when it issued the DVPO. But the superior court made clear that it referred to this incident solely to support its concern that Kirk continued to pose a danger to Barbara.

only that a court find "by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner." Kirk concedes this point. We note, too, that the superior court did make such findings in the interim order it issued in the concurrent divorce case.

17.     Because the superior court did not abuse its discretion when it issued a long-term DVPO against Kirk, we AFFIRM the superior court's order.[5]

---

[5]     Because Kirk did not prevail, he is not entitled to attorney's fees. *See* Alaska R. Civ. P. 82 (providing for prevailing party attorney's fees award).